FORM B10 (Official Form 10) (12/03)

| UNITED STATES BANKRUPTCY COURT_____ | DISTRICT OF PUERTO RICO | |
|---|---|---|

| Name of Debtor **VICTOR CARDONA CARDONA** | Case Number: **10-02425 MCF** |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. & 503.

**CHAPTER 11**

Name of Creditor ( The person or other entity to whom the debtor owes money or property)
**BANCO POPULAR DE PUERTO RICO**

Name and address where notices should be sent:

**MIGDALIA EFFIE GUASP, ESQ.**
**SPECIAL LOANS DEPARTMENT**
**PO BOX 362708**
**SAN JUAN PR 00936-2708**

Telephone number: **765-9800    EXT 6192**

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never receive notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

This Space is for Court Use Only

Account or other number by which creditor identifies debtor:
**SEE EXHIBIT "A"**

Check here ☐ replaces
if this claim ☐ amends a previously filed claim, dated

**1. Basis for Claim**

☐ Goods sold
☐ Services performed
☒ Money loaned
☐ Personal injury/ wrongful death
☐ Taxes
☐ Other _____

☐ Retiree benefits as defined in 11 U.S.C & 1114(a)
☐ Wages, salaries, and compensation (fill out below)
  Your SS # : _____
  Unpaid compensation for services performed
  from _____ to _____
  (date)        (date)

**2. Date debt was incurred:**
**SEE SUPPORTING DOCUMENTS**

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:**

| $373,841.53 | $193,000.00 | | $566,841.53 |
|---|---|---|---|
| (unsecured) | (secured) | (priority) | (Total) |

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement all interest or additional charges.

**5. Secured Claim.**

☒ Check this box if your claim is secured by collateral (including a right of setoff).
  Brief Description of Collateral:
  ☒ Real Estate  ☐ Motor Vehicle
  ☒ Other   UCC

  Value of Collateral $ _____

  Amount of arrearage and other charges at time case filed included in secured claim, if any:

**6. Unsecured Nonpriority Claim.** $ _____

☐ Chek this box if : a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim .**

☐ Check this box if you have an unsecured priority claim
  Amount entitled to priority _____
  Specify the priority of the claim:
☐ Wages, Salaries, or commissions (up to $4,925). * earned within 90 days before filing
  - 11 U.S.C & 507 (a)(3).
☐ Contributions to an employee benefit plan - 11 U.S.C. & 507(a)(4).
☐ Up to $2,100. * of deposits toward purchase,lease or rental of property or services for personal, family, or household use - 11 U.S.C. & 507(a)(6).
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child
  - 11 U.S.C. & 507(a)(7).
☐ Taxes or penalties owed to governmental units-11 U.S.C. 850/(a)(8).
☐ Other Specify applicable paragraph of 11 U.S.C. & 507(a)( ____ ).

* Amount are subject to adjustment on 4/1/98 and every 3 years thereafter with respect to cases commenced on or after the date of admustment.

8 . Credits: The amounts of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

9 . Supporting Documents: Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS.If the documents are not available, explain. If the documents are voluminous, attach a summary.

10 . Date- Stamped Copy: To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

This Space is for Court Use Only

| Date **4/7/2010** | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim ( attach copy of power of attorney, if any) : **CREDITOR #504030** |
|---|---|

Penalty for presenting fraudulent claim. Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. && 152 and 3571.

IN THE UNITED STATES BANKRUPCY COURT

FOR THE DISTRICT OF PUERTO RICO


BPPR EXHIBIT "A"


IN RE:   VICTOR M CARDONA CARDONA


CASE NO.          10-02425 MCF            CHAPTER 11


LOAN 2511622-9001


PRINCIPAL                          $       479,160.23
ACCRUED INTEREST AS OF 03/29/10            83,126.32
LATE CHARGE                                 4,554.98
                                       _____
TOTAL:                             $       566,841.53


PER DIEM: $106.48



# U.S. Small Business Administration

## NOTE

| SBA Loan # | PLP 85946040-01 |
|---|---|
| SBA Loan Name | VINAVIC RESTAURANT INC. |
| Date | MARCH 31, 2005 |
| Loan Amount | $584,000.00 |
| Interest Rate | 8% |
| Borrower | VINAVIC RESTAURANT INC. |
| Operating Company | N/A |
| Lender | BANCO POPULAR DE PUERTO RICO |

*VMCC*

1. PROMISE TO PAY:

   In return for the Loan, Borrower promises to pay to the order of Lender the amount of
   
   FIVE HUNDRED EIGHTY FOUR THOUSAND _____ Dollars,
   
   interest on the unpaid principal balance, and all other amounts required by this Note.

2. DEFINITIONS:

   "Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

   "Guarantor" means each person or entity that signs a guarantee of payment of this Note.

   "Loan" means the loan evidenced by this Note.

   "Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

   "SBA" means the Small Business Administration, an Agency of the United States of America.

## 3. PAYMENT TERMS:

Borrower must make all payments at the place Lender designates. The payment terms for this Note are:

Maturity:  This Note will mature in 10 years and from date of Note.

Repayment Terms: Lender must insert onto SBA Note, Form 147, to be executed by Borrower, the following terms, without modification.  Lender must complete all blank terms on the Note at time of closing:

The initial interest rate is 8.00% per year for 5 years. This initial rate is the prime rate on the date SBA received the loan application, plus 2.75%. The interest rate on this Note will begin to fluctuate as described below. The initial interest rate remains in effect until the first change period begins.

Borrower must pay a total of 6 payments of interest only on the disbursed principal balance beginning one month from the month this Note is dated and every month thereafter; payments must be made on the same day as the date of this Note in the months they are due.

Borrower must pay principal and interest payments of $7,329.97 every month, beginning seven months from the month this Note is dated; payments must be made on the ------30-calendar day in the months they are due.

Lender will apply each installment pay,  then to pay any late fees, and will apply any remaining balance to reduce principal.

The interest rate will be adjusted every 5 years (the "change period").

The "Prime Rate" is the prime rate in effect on the business day of the month in which an interest rate occurs, as published in the Wall Street Journal on the next business day.

The adjusted rate will be 2.75% above the Prime Rate. Lender will adjust the interest rate on the first calendar day of each change period. The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change.

Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note.

If the SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at rate in effect at the time of the earliest uncured payment default. If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.

Loan Prepayment:

Notwithstanding any provision in this Note to the contrary:

Borrower may prepay this Note.  Borrower may prepay 20% or less of the unpaid principal balance at any time without notice.  If Borrower prepays more than 20% and the Loan has been sold on the secondary market, Borrower must:
a.☐Give Lender written notice;
b.☐Pay all accrued interest; and
c.☐If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date lender receives the notice, less any interest accrued during the 21 days and paid (See attached page.)

Continuation of "..."

under subparagraph b., above.

If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice.

All remaining principal and accrued interest is due and payable 10 years from date of Note.

Late Charge: If a payment on this Note is more than 10 days late, Lender may charge Borrower a late fee of up to 5.00% of the unpaid portion of the regularly scheduled payment.

*JMCC*

Bankers Systems, Inc., St. Cloud, MN

4. DEFAULT:

Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:

A. Fails to do anything required by this Note and other Loan Documents;

B. Defaults on any other loan with Lender;

C. Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;

D. Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;

E. Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;

F. Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;

G. Fails to pay any taxes when due;

H. Becomes the subject of a proceeding under any bankruptcy or insolvency law;

I. Has a receiver or liquidator appointed for any part of their business or property;

J. Makes an assignment for the benefit of creditors;

K. Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note;

L. Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent; or

M. Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.



5. LENDER'S RIGHTS IF THERE IS A DEFAULT:

Without notice or demand and without giving up any of its rights, Lender may:

A. Require immediate payment of all amounts owing under this Note;

B. Collect all amounts owing from any Borrower or Guarantor;

C. File suit and obtain judgment;

D. Take possession of any Collateral; or

E. Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

6. LENDER'S GENERAL POWERS:

Without notice and without Borrower's consent, Lender may:

A. Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;

B. Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;

C. Release anyone obligated to pay this Note;

D. Compromise, release, renew, extend or substitute any of the Collateral; and

E. Take any action necessary to protect the Collateral or collect amounts owing on this Note.

7. WHEN FEDERAL LAW APPLIES:

When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

8. SUCCESSORS AND ASSIGNS:

Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

A. All individuals and entities signing this Note are jointly and severally liable.

B. Borrower waives all suretyship defenses.

C. Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

D. Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them.

E. Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.

F. If any part of this Note is unenforceable, all other parts remain in effect.

G. To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.

10. STATE-SPECIFIC PROVISIONS:

**First Mortgage in the amount of $75,000.00 on land and improvements located at 17 A, Mayagüez, Terrace, Mayagüez, Puerto Rico. This property is residential.**

**First Perfected Security Interest, subject to no other liens, in the following personal property: (including any proceeds and products), acquired with loan proceeds, including all replacements and substitutions, wherever located: Equipment**

**Guarantee on SBA Form 148, By Mr. & Mrs. Victor M. Cardona, resident in Puerto Rico**

JMCC

11. BORROWER'S NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated under this Note as Borrower.

_Vucc_

**VICTOR MANFREDO CARDONA CARDONA**
**representing by VINAVIC RESTAURANT, INC.**

**AFFIDÁVIT NUMBER: - 12,079 ·**

Suscribed in my presence by **VICTOR MANFREDO CARDONA CARDONA**
representing by **VINAVIC RESTAURANT, INC.**, of legal age, married, proprietor and resident
of Mayagüez. To me personally known, at Sabana Grande, Puerto Rico. This March 31,
2005.

**NOTARY**







U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| SBA Loan # | PLP 85946040-01 |
|---|---|
| SBA Loan Name | VINAVIC RESTAURANT INC. |
| Guarantor | VICTOR MANFREDO CARDONA CARDONA<br>VIVIAN ENEIDA VICENTE MERCADER |
| Borrower | VINAVIC RESTAURANT INC. |
| Lender | BANCO POPULAR DE PUERTO RICO |
| Date | MARCH 31, 2005 |
| Note Amount | $584,000.00 |



1.  **GUARANTEE:**

    Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2.  **NOTE:**

    The "Note" is the promissory note dated _____ MARCH 31, 2005 _____ in the principal amount of
    _____ FIVE HUNDRED EIGHTY FOUR THOUSAND _____ Dollars,
    from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3.  **DEFINITIONS:**

    "Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

    "Loan" means the loan evidenced by the Note.

    "Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

    "SBA" means the Small Business Administration, an Agency of the United States of America.

4.  **LENDER'S GENERAL POWERS:**

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A.  Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B.  Refrain from taking any action on the Note, the Collateral, or any guarantee;

C.  Release any Borrower or any guarantor of the Note;

D.  Compromise or settle with the Borrower or any guarantor of the Note;

E.  Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F.  Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G.  Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H.  Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5.  **FEDERAL LAW:**

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.



6.  **RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:**

To the extent permitted by law,

A.  Guarantor waives all rights to:
    1)  Require presentment, protest, or demand upon Borrower;
    2)  Redeem any Collateral before or after Lender disposes of it;
    3)  Have any disposition of Collateral advertised; and
    4)  Require a valuation of Collateral before or after Lender disposes of it.

B.  Guarantor waives any notice of:
    1)  Any default under the Note;
    2)  Presentment, dishonor, protest, or demand;
    3)  Execution of the Note;
    4)  Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
    5)  Any change in the financial condition or business operations of Borrower or any guarantor;
    6)  Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
    7)  The time or place of any sale or other disposition of Collateral.

C.  Guarantor waives defenses based upon any claim that:
    1)  Lender failed to obtain any guarantee;
    2)  Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
    3)  Lender or others improperly valued or inspected the Collateral;
    4)  The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5) Lender impaired the Collateral;

6) Lender did not dispose of any of the Collateral;

7) Lender did not conduct a commercially reasonable sale;

8) Lender did not obtain the fair market value of the Collateral;

9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11) Lender made errors or omissions in Loan Documents or administration of the Loan;

12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

13) Lender impaired Guarantor's suretyship rights;

14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15) Borrower has avoided liability on the Note; or

16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7. DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.



8. SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10. STATE-SPECIFIC PROVISIONS:

**First Mortgage in the amount of $75,000.00 on land and improvements located at 17 A, Mayagüez, Terrace, Mayagüez, Puerto Rico. This property is residential.**

**First Perfected Security Interest, subject to no other liens, in the following personal property: (including any proceeds and products), acquired with loan proceeds, including all replacements and substitutions, wherever located: Equipment**

**Guarantee on SBA Form 148, By Mr. & Mrs. Victor M. Cardona, resident in Puerto Rico**

11. GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12. GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

_____          _____
**VICTOR MANFREDO CARDONA CARDONA**          **VIVIAN ENEIDA VICENTE MERCADER**

**AFFIDÁVIT NUMBER:** 12,087

Suscribed in my presence by **VICTOR MANFREDO CARDONA CARDONA** and **VIVIAN ENEIDA VICENTE MERCADER**, of legal age, married with each other, proprietors and residents of Mayagüez. To me personally known, at Sabana Grande, Puerto Rico. This March 31, 2005.


NOTARY




# BANCO POPULAR

En consideración a todos y cualesquiera préstamos hasta ahora concedidos o que se concedan o continúen concediéndose y a las facilidades de crédito o financiamiento concedidas en el pasado o que se concedan o continúen concediéndose en el futuro por el Banco Popular de Puerto Rico (de ahora en adelante denominado el "Banco") a VINAVIC RESTAURANT INC. todos los cuales se denominarán en adelante los "Suscribientes"; los Suscribientes, por virtud de este documento, pignoran, ceden, entregan y traspasan al Banco los siguientes valores y cualquier otro valor o instrumento emitido para la renovación, extensión de la fecha de vencimiento, conversión o sustitución de dichos valores:

---(a) Pagaré Hipotecario por la suma principal de $75,000.00 pagadero a favor del Banco Popular de Puerto Rico, o a su orden, el cual devenga intereses a razón del OCHO POR CIENTO (8%) por ciento anual, vencedero a la presentación. Suscrito el día treinta y uno (31) de marzo de dos mil cinco (2005), por Victor Manfredo Cardona Martínez también conocido por Victor M. Cardona y Elba Luz Cardona Morales también conocido por Elba Luz Cardona, ante el notario Feliberto Ramírez Toro; y garantizad con hipoteca voluntaria mediante la escritura número cincuenta y uno (51) , de igual fecha y ante el mismo notario. Dicho pagaré grava la finca 13,134, inscrita al folio 187, del tomo 458, de Mayagüez, Puerto Rico. ---

---(b) Gravamen Mobiliario sobre equipos y maquinarias suscrito el día treinta y uno (31) de marzo de dos mil cinco (2005) por Vinavic Restaurant Inc., ante el notario Feliberto Ramírez Toro.---

---(c) Carta de Garantía Ilimitada y Continua suscrita por Victor Manfredo Cardona Cardona y Vivian Eneida Vicente Mercader, ante el notario Feliberto Ramírez Toro el día treinta y uno (31) de marzo de dos mil cinco (2005), para garantizar a Vinavic Restaurant Inc. en sus transacciones pasadas, presentes y futuras con el Banco Popular de Puerto Rico. ---

ESTAS GARANTIAS Y COLATERALES GARANTIZAN TODA DEUDA U OBLIGACION PASADA, PRESENTE O FUTURA DE VINAVIC RESTAURANT INC. CON EL BANCO POPULAR DE PUERTO RICO. ---

Los valores antes identificados han de garantizar y asegurar:
* el pago de todas o cualesquiera deudas y obligaciones de los Suscribientes, independientemente de la clase o naturaleza de éstas, que estén vencidas o sean exigibles en la actualidad o que venzan y sean exigibles en el futuro; y
* los intereses, cargos por demora, penalidades, costas, gastos, desembolsos y honorarios de abogados aplicables.

Los Suscribientes aceptan que todas las deudas y obligaciones cuyo pago está garantizado por la prenda que se constituye mediante este documento vencerán inmediatamente, sin presentación, requerimiento de pago, protesto o aviso de clase alguna; todo lo cual se renuncia expresamente en cualquiera de los casos en los que los Suscribientes:
* incumplan en el pago de cualquier deuda u obligación para con el Banco, independientemente de su origen o la forma en que surgió la misma;
* avengan insolventes o efectúen cesión general de sus bienes para beneficio de acreedores o a un agente autorizado para liquidar una parte sustancial de sus bienes o activos;
* admitan por escrito su inhabilidad para pagar sus deudas a su vencimiento, o se les adjudique en quiebra, o radiquen petición de quiebra voluntaria o de reorganización o para llevar a cabo un plan de pago con acreedores bajo las leyes federales de quiebra o cualquier otra ley similar aplicable a los Estados Unidos de América o del Estado Libre Asociado de Puerto Rico; o radiquen contestación a una petición de acreedores que admite las alegaciones de consecuencia en la que se solicite la adjudicación en quiebra, reorganización, plan de pago o arreglo con acreedores bajo cualquiera de las leyes antes mencionadas (cualquiera de los anteriores procedimientos continúe sin desestimar por treinta (30) días; o
* soliciten o permitan el nombramiento, en cualquier procedimiento de quiebra, sindicatura u otro procedimiento, de un síndico o fiduciario para los Suscribientes o para todos o una parte sustancial de los bienes y activos de cualquiera de los Suscribientes, y el nombramiento de tal síndico o fiduciario así nombrado no les dejado sin efecto dentro de treinta (30) días.

En Sabana Grande, Puerto Rico, hoy treinta y uno (31) de marzo de dos mil cinco (2005).

Firma del Cliente:                                    Firma del Cliente:
VICTOR MANFREDO CARDONA MARTINEZ      ELBA LUZ CARDONA MORALES
también conocido por VICTOR M. CARDONA        también conocida por ELBA LLUZ CARDONA

Firma del Cliente:                                    Firma del Cliente:
VICTOR MANFREDO CARDONA CARDONA       VIVIAN ENEIDA VICENTE MERCADER

Affidávit Núm. 12,084
Jurado y suscrito ante mí por VICTOR MANFREDO CARDONA MARTINEZ también conocido por VICTOR M. CARDONA y ELBA LUZ CARDONA MORALES también conocida por ELBA LUZ CARDONA, quiénes son mayores de edad, casados entre sí propietarios y vecinos de Mayagüez, Puerto Rico; VICTOR MANFREDO CARDONA CARDONA Y VIVIAN ENEIDA VICENTE MERCADER, quienes son mayores de edad, casados entre sí, propietarios y vecinos de Mayagüez, Puerto Rico, a quiénes conozco personalmente.

En Sabana Grande, Puerto Rico, hoy treinta y uno (31) de marzo de dos mil cinco (2005).

Notario Público

-------------------------------- PAGARE HIPOTECARIO --------------------------

-----POR: $75,000.00--------------------------------------------------------------

-----VENCIMIENTO: A LA PRESENTACION ------------------------------------

-----Por valor recibido, los abajo firmantes reconocen adeudar y se comprometen a pagar al **BANCO POPULAR DE PUERTO RICO**, o a su orden, la cantidad de **SETENTA Y CINCO MIL DOLARES ($75,000.00)** en el momento del vencimiento del mismo, según se indica, en el lugar que determine el acreedor y en moneda de curso legal de los Estados Unidos de América. --------------------------------------------

-----Este pagaré devenga intereses a razón del **OCHO PUNTO CINCUENTA POR CIENTO (8%)** anual fijo y pagaderos por meses vencidos al acreedor del mismo y hasta el día de su total y completo pago e intereses en caso de mora al tipo arriba estipulado. ---

-----El principal de este pagaré, los intereses vencidos y los intereses de mora, así como otros créditos, están asegurados y sujetos a hipoteca con rango de **PRIMERA**, constituida en el día de hoy por los suscribientes ante el notario fedante, mediante la **ESCRITURA NUMERO CINCUENTA Y UNO (51).**--------------------------

-----Los abajo firmantes se someten al tribunal con competencia que escoja el acreedor para en caso de que el mismo tenga que recurrir al Tribunal General de Justicia, a fin de cobrar el todo o parte no pagada de este pagaré; y se comprometen a pagar una cantidad equivalente a un diez por ciento (10%) del principal de esta obligación, la cual será pagadera y exigible con la mera radicación de la demanda, para cubrir costas, gastos y honorarios de abogado que puedan incurrirse en el cobro de este pagaré o alguna porción del mismo y/o de sus intereses vencidos. --------------------------------------

-----Renuncian expresamente a la presentación, protesto y demanda de cobro de este pagaré. --------------------------------------------------------------------

-----En la ciudad de Sabana Grande, Puerto Rico, a treinta y uno (31) días del mes de marzo del dos mil cinco (2005).---------------------------------------

**VICTOR MANFREDO CARDONA MARTINEZ**
también conocido por VICTOR M. CARDONA

**ELBA LUZ CARDONA MORALES**
también conocida por ELBA LUZ CARDONA

**AFFIDAVIT NUMERO: -12,080**

-----Reconocido y suscrito ante mí por **VICTOR MANFREDO CARDONA MARTINEZ** también conocido por **VICTOR M. CARDONA** y **ELBA LUZ CARDONA MORALES** también conocida por **ELBA LUZ CARDONA**, quienes son mayores de edad, casados entre sí, propietarios y vecinos de Mayagüez, Puerto Rico, a quienes DOY FE de conocer personalmente, en sitio y fecha arriba indicado. --------------

NOTARIO PUBLICO

ESTUDIO DE TITULO

CASO: VINAVIC RESTAURANTS INC.
   RE: Martha Davison / 255058 / ID2511622 / Suc. 319 / C.C. 86/19-

FINCA: #13134, inscrita al folio 187 del tomo 458 de Mayagüez, (Sección de Mayagüez).

DESCRIPCION:

URBANA: Solar número 17-A del bloque D de la Urbanización Mayagüez Terrace, en el Barrio Miradero de Mayagüez, Puerto Rico, con un área de 237.50 metros cuadrados. Colinda por el NORTE, en 9.50 metros, con la calle #7; por el SUR, en 9.50 metros, con el solar 9-B; por el ESTE, en 25.00 metros, con el solar #18-B; y por el OESTE, en 25.00 metros, con el resto de la finca principal de la cual se segrega; todos del mismo bloque de la Urbanización.

ENCLAVA: Una casa de concreto armado de una sola planta con techo de azotea y pisos de lozas del país, que constituye una vivienda independiente, consistiendo de tres dormitorios con sus closets, sala y comedor en una sola unidad, cocina con su closet, cuarto de baño y balcón.

ORIGEN: Se segrega de la finca #10882, inscrita al folio 181 vto. del tomo 360 de Mayagüez.

PROPIETARIO REGISTRAL: Los esposos VICTOR M. CARDONA MARTINEZ, también conocido como VICTOR MANFREDO CARDONA MARTINEZ y ELBA LUZ CARDONA MORALES, quienes adquieren por compra a Ramón Pérez Irizarry, mayor de edad, casado con Gladys Bayron, por el precio de $7,000.00. Según escritura #466, otorgada en Mayagüez, el 21 de octubre de 1968, ante Carlos García Méndez, inscrita al folio 189 del tomo 458 de Mayagüez, inscripción 2da.

CARGAS Y GRAVAMENES

Por su Procedencia:

Servidumbres a favor de la Autoridad de las Fuentes Fluviales y Condiciones Restrictivas.

Por sí:

1-HIPOTECA: Por $75,000.00, con intereses al 8.50% anual, en garantía de un pagaré a favor del Banco Popular de Puerto Rico, que vence a la presentación. Según escritura #51, otorgada en Sabana Grande el 31 de marzo de 2005, ante Feliberto Ramírez Toro, inscrita al folio 108 del tomo 1515 de Mayagüez, inscripción 4ta. y última.

REVISADOS: Embargos por Contribuciones, Embargos Federales, Sentencias y Bitácora Electrónica.

En esta Sección se ha establecido un sistema computadorizado de operaciones. Esta Corporación no se hace responsable por errores u omisiones en la entrada de datos en el sistema de computadora.

San Juan Puerto Rico, a 16 de abril de 2010.

JGI TITLE SERVICE, INC.
JGITS/jcr
Cotejado por :
13134_MAY_E10
F-jmss

BANCO POPULAR DE PUERTO RICO
APARTADO 1720
MAYAGUEZ, PR 00681

Núm Registro (File #): 2005038049

*Reservado para el oficial de archivo / Reserved for the filing officer*

Sello de fecha y hora:
*Date and time stamp:*

Número de registro:
*Registration number:*

DEPARTAMENTO
DE ESTADO
27 MAY 2005
SECCION DE
CORRESPONDENCIA

**1. DEVOLVER COPIA A / RETURN COPY TO** *(Nombre y dirección postal / Name and mailing address)*

BUFETE ACEVEDO & RAMIREZ
APARTADO 93
HORMIGUEROS, PUERTO RICO 00660

**1. NOMBRE DEL PRIMER DEUDOR / FIRST DEBTOR'S NAME** *Complete sólo un nombre (a o b) / Insert only one name (a or b)*

| a. Apellido del individuo / Individual's last name | Segundo apellido / Second surname | Primer nombre / First name | Segundo nombre / Middle name | Sufijo/Suffix |
|---|---|---|---|---|

b. Nombre de la entidad / Entity name

VINAVIC RESTAURANT, INC.

| c. Dirección postal / Mailing address | Ciudad / City | Estado/State | País/Country | Código postal / Zip code |
|---|---|---|---|---|
| 17 AVE. UNIVERSIDAD | SAN GERMAN | PR | | 00683 |

d. Número de seguro social o patronal / Social security or tax-ID number
66-063-5307

e. (Opcional) Información adicional sobre la entidad / (Optional) Additional information about the entity

**2. NOMBRE DE DEUDOR ADICIONAL / ADDITIONAL DEBTOR'S NAME** *Complete sólo un nombre (a o b) / Insert only one name (a or b)*

| a. Apellido del individuo / Individual's last name | Segundo apellido / Second surname | Primer nombre / First name | Segundo nombre / Middle name | Sufijo/Suffix |
|---|---|---|---|---|

b. Nombre de la entidad / Entity name

| c. Dirección postal / Mailing address | Ciudad / City | Estado/State | País/Country | Código postal / Zip code |
|---|---|---|---|---|

d. Número de seguro social o patronal / Social security or tax-ID number

e. (Opcional) Información adicional sobre la entidad / (Optional) Additional information about the entity

**3. NOMBRE DEL ACREEDOR GARANTIZADO / SECURED PARTY'S NAME** *Complete sólo un nombre (a o b) / Insert only one name (a or b)*

| a. Apellido del individuo / Individual's last name | Segundo apellido / Second surname | Primer nombre / First name | Segundo nombre / Middle name | Sufijo/Suffix |
|---|---|---|---|---|

b. Nombre de la entidad / Entity name

BANCO POPULAR DE PUERTO RICO

| c. Dirección postal / Mailing address | Ciudad / City | Estado/State | País/Country | Código postal / Zip code |
|---|---|---|---|---|
| APARTADO 1720 | MAYAGUEZ | PR | | 00681 |

**4. ESTA DECLARACION DE FINANCIAMIENTO CUBRE LAS SIGUIENTES CLASES O ARTICULOS DE PROPIEDAD:**
*THIS FINANCING STATEMENT COVERS THE FOLLOWING TYPES OR ITEMS OF PROPERTY:*

---ACUERDO DE GRAVAMEN MOBILIARIO (SECURITY INTEREST) SOBRE EQUIPO Y MAQUINARIAS de toda clase, muebles, accesorios, calderas, generadores, equipo de oficina, materiales de oficina, rótulos, envolturas, envases, cartones, cajas, materiales de empaque, bienes, maquinaria, herramientas, y anaqueles, góndolas, y otras accesorios de la tienda o negocio, ya sean propiedad actual de LA DEUDORA o más adelante adquiridos por medio de reemplazo, sustitución, adición, o de otra forma, junto con todas las piezas y accesorios anejados ahora o en el futuro o añadidos a estos.---

TODA CLASE DE EQUIPO Y MAQUINARIAS QUE SEA PROPIEDAD ACTUAL DE LOS DEUDORES O QUE SEA ADQUIRIDA EN EL FUTURO, INCLUYENDO PERO NO LIMITADO A:---

VER ANEJO

**5. MARQUE SI APLICA / CHECK IF APPLICABLE** *(Describa la propiedad en el apéndice / Describe the real estate in the appendum)*

☐ Los bienes anteriores habrán de convertirse en inmuebles por su destino. Esta declaración se presentará para registro en el Registro de la Propiedad.
*The goods described above are to become fixtures. This Financing Statement will be filed for record in the Real Estate Registry.*

**6. FIRMAS / SIGNATURE(S)**

| Deudor / First debtor | Deudor adicional / Additional debtor | Acreedor garantizado / Secured party |
|---|---|---|

**7. NOTARIA / NOTARY**

AFFIDAVIT NUMERO / NUMBER: 12,085
Jurado y suscrito, ante mí por: / Sworn and subscribed before me by:

VINAVIC RESTAURANT INC., cuyo número de seguro social patronal es 66-063-5307 representado por VICTOR MANFREDO CARDONA CARDONA, cuyo número de Seguro Social es 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, quien es mayor de edad, casado, propietario y vecino de Mayagüez, Puerto Rico, y BANCO POPULAR DE PUERTO RICO, seguro social 66-056-1870, representado en este acto por JOFFRE GOMEZ MUÑOZ, cuyo número de seguro social es 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, quien es mayor de edad, casado, ejecutivo bancario, propietario y vecino de Maricao, Puerto Rico, a quienes doy fe de conocer personalmente.------

En / In: SABANA GRANDE, PUERTO RICO

Fecha / Date: 31 DE MAYO 2005

Notario Público / Notary Public

Felix A. Ramirez Toro
1993
FRT
Abogado Notario

## ACUERDO DE GRAVAMEN MOBILIARIO

## I. INTERÉS ASEGURADO
## (SECURITY INTEREST)

-----ESTE ACUERDO DE GRAVAMEN MOBILIARIO, por las siguientes PARTES: -----------

-----DE UNA PARTE: VINAVIC RESTAURANT, INC., con Seguro Social número sesenta y seis guión cero sesenta y tres guión cinco mil trescientos siete (66-063-5307), una corporación organizada y existente bajo las leyes del Estado Libre Asociado de Puerto Rico, representada en este acto por DON VICTOR MANFREDO CARDONA CARDONA, con Seguro Social número quinientos ochenta y tres guión cuarenta y nueve guión seis mil ciento cuarenta y siete (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), quien es mayor de edad, casado con doña Vivian E. Vicente Mercader, propietario y vecino de Mayagüez, Puerto Rico según lo acredita Certificación de Resolución de la Junta de Directores de VINAVIC RESTAURANT, INC., con fecha del día treinta y uno (31) de marzo del año dos mil cinco (2005) y juramentada bajo affidávit, ante el notario Feliberto Ramírez Toro, en ese mismo día. De aquí en adelante denominada LA PARTE DEUDORA. --------------

-----Y DE LA OTRA PARTE: BANCO POPULAR DE PUERTO RICO, con Seguro Social número sesenta y seis guión cero cincuenta y seis guión mil ochocientos setenta (66-056-1870), una Corporación Bancaria doméstica organizada y existente de acuerdo con las Leyes del Estado Libre Asociado de Puerto Rico, representado en este acto por DON JOFFRE GOMEZ MUÑOZ, cuyo número de Seguro Social es quinientos ochenta y dos guión setenta y siete guión cinco mil setecientos cuarenta y nueve (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), quien es mayor de edad, casado, ejecutivo bancario y vecino de Maricao, Puerto Rico; según lo acredita Certificación de Resolución de la Junta de Directores de Banco Popular de Puerto Rico y juramentada bajo la affidávit número mil ciento veintiuno (1,121), ante el notario Francisco Pericas Alfaro, el día veintidós (22) de diciembre del año dos mil cuatro (2004), de aquí en adelante denominado EL ACREEDOR HIPOTECARIO. ------------------------------------------------------------------------

---------------------------------------------- DOY FE -------------------------------------------

-----Del conocimiento personal de los comparecientes, y por sus dichos la doy de sus circunstancias personales. Me aseguran tener, y a mi juicio tienen, la capacidad legal necesaria para formalizar el presente otorgamiento; y no constándome nada en contrario, en tal virtud, libre y voluntariamente: -------------------------------------------------------------------------

---------------------------------------------- EXPONEN -----------------------------------------

-----PRIMERO:      Que EL ACREEDOR GARANTIZADO ha concedido a LA PARTE DEUDORA un préstamo por la suma de QUINIENTOS OCHENTA Y CUATRO MIL

1

**DOLARES ($584,000.00)**, crédito para adquirir el cien por ciento (100%) de las acciones de Aguadilla Taco Maker, Inc., devengado intereses a razón del **OCHO CIENTO (8%)** anual fijo e intereses en caso de mora o de cualquier incumplimiento a razón del cuatro (4%) por ciento sobre la tasa de interés arriba estipulada. Dicho aumento en la tasa de interés estará vigente mientras la parte **DEUDORA** se mantenga en incumplimiento. -----------------------------------

-----**SEGUNDO:** Es la intención de **LA DEUDORA** dar, conceder y otorgar a **EL ACREEDOR GARANTIZADO** y **EL ACREEDOR GARANTIZADO** desea definir sus intereses asegurados y obtener gravamen mobiliario sobre garantía y **COLATERAL**, así como sobre **COLATERAL** adicional para las deudas presentes y futuras de **LA DEUDORA** con relación a **EL ACREEDOR GARANTIZADO**. **LA DEUDORA** y **EL ACREEDOR GARANTIZADO** entienden y acuerdan que los términos y disposiciones aquí expuestas habrán de reconfirmar, al igual que aumentar, suplementar y expandir los derechos, los intereses asegurados de **EL ACREEDOR GARANTIZADO**, al igual que sus privilegios y remedios, según aparecen dispuestos en este y en cualquier acuerdo de garantía previamente otorgado por **LA DEUDORA** y **EL ACREEDOR GARANTIZADO**. -------------------------------------------

## II. OBLIGACIONES ASEGURADAS

-----**PRIMERO:** **LA DEUDORA** y **EL ACREEDOR GARANTIZADO** en este otorgamiento, teniendo la intención de estar legal y mutuamente comprometidos por medio del mismo, acuerdan, que los intereses asegurados ("security interest") y gravamen mobiliario son los otorgados en la **COLATERAL** descrita más adelante para asegurar y garantizar el desempeño y cumplimiento por **LA DEUDORA** del préstamo mencionado, o cualquier aumento, prórroga, extensión y renovación del mismo, y cualesquiera otras deudas y obligaciones presentes o futuras de **LA DEUDORA** con **EL ACREEDOR GARANTIZADO**, de cualquier naturaleza, directa, indirecta, absoluta, contingente, o comprendiendo la misma clase de deuda de la obligación original, al igual que el pago de cualquier y toda sus adeudadas hasta ahora, antes, y de ahora en adelante, adeudadas a **EL ACREEDOR GARANTIZADO** por **LA DEUDORA**, estén o no evidenciadas por cualquier pagaré u otro instrumento y ya sean o no para el pago de dinero, directo o indirecto, absoluto o contingente, adeudado o a ser adeudado por **LA DEUDORA**, existiendo actualmente, o de ahora en adelante, al igual que todas las obligaciones, cualesquiera otros acuerdos y/o contratos, y financiamientos con **EL ACREEDOR GARANTIZADO**, ahora y en el futuro, e incluyendo, sin limitación alguna, cualquier deuda, responsabilidad u obligación adeudada a **LA DEUDORA** con relación a terceros, las cuales **EL**

2

**ACREEDOR GARANTIZADO** pudo haber obtenido por cesión y otra forma, y en adición, incluyendo sin limitación, todo interés, honorarios, cargos, gastos y honorarios de abogado imputables a la cuenta de **LA DEUDORA** hasta el alcance no prohibido por la ley aplicable, ya sean provistos para este o en cualquier otro acuerdo con **EL ACREEDOR GARANTIZADO**. --

### III. COLATERAL

-----PRIMERO:      Por medio de este Acuerdo, **LA DEUDORA** DA, CONCEDE y OTORGA a **EL ACREEDOR GARANTIZADO** un gravamen mobiliario continuo y un interés asegurado (security interest) en y sobre los siguientes tipos de propiedad (de aquí en adelante a veces referido como **COLATERAL**): -----------------------------------------------------------------------

(EL MARCAR LOS ENCASILLADOS A CONTINUACION CONSTITUYE LA INCLUSION DE LA **COLATERAL** DESCRITA ALLI DENTRO COMO GARANTIA DEL PRESTAMO).-

[ ]      **INVENTARIO** - todo inventario de toda naturaleza, provisiones, artículos que se venden en una tienda, toda materia prima, trabajos en proceso y todos los artículos de propiedad personal, que se retienen para venta o se suplen o han de ser suplidos bajo contratos de servicio, venta o arrendamiento, y todos los bienes devueltos, reclamados y reposeídos, ya sean que estén ahora en la posesión de **LA DEUDORA** o adquiridos más adelante por medio de reemplazo, sustitución, adición o de otra forma. -------------------------------------------------------

[X]      **EQUIPO Y MAQUINARIA, ETC**. - todo equipo y maquinaria de toda clase, muebles, accesorios, calderas, generadores, equipo de oficina, materiales de oficina, rótulos, envolturas, envases, cartones, cajas, materiales de empaque, bienes, maquinaria, herramientas, y anaqueles, góndolas, y otros accesorios de la tienda o negocio, ya sean propiedad actual de LA DEUDORA o más adelante adquiridos por medio de reemplazo, sustitución, adición, o de otra forma, junto con todas las piezas y accesorios anejados ahora o en el futuro o añadidos a éstos.---
Con la mera entrega al Banco de las facturas de los equipos y/o maquinarias a adquirirse por la parte deudora en el futuro será suficiente evidencia de que dichos equipos pasarán a formar parte de este gravamen mobiliario.--------------------------------------------------------

**VER ANEJO**

[ ]      **CUENTAS, ETC**. - todas las cuentas existentes y futuras, cuentas por cobrar, derechos de contratos, instrumentos de crédito de bienes muebles, pagarés, instrumentos, documentos, contratos, derechos de acción, primas de seguro devueltas y no ganadas, reembolsos de impuestos y todas las obligaciones adeudadas a **LA DEUDORA** actualmente o más adelante

3

junto con todo el interés de **LA DEUDORA** en bienes, la venta o el arrendamiento que habría dado o pudiera dar lugar a tales cuentas de derecho de contrato, incluyendo pero no limitada a:--

[] **PRODUCTOS AGRICOLAS** - todo el alimento, ingredientes del alimento, incluyendo pero no limitándose a habichuelas de soya, maíz, cebada, trigo, harina de soya, aceite de soya y desechos de pescado actualmente propiedad de o a ser adquiridos, y todo el ganado de todas clases, tipo, peso, edad, vivo, en gestación, muerto o siendo procesado, a mano, en almacenaje, o en transito, actualmente propiedad de o adquirido más adelante incluyendo pero no limitándose a: --------------------------------------------------------------------

[] **COSECHAS** - todas las cosechas sembradas o a ser sembradas en los terrenos descritos más adelante incluyendo pero no limitándose a: -----------------------------------

[] **INMUEBLES POR SU DESTINO** - toda propiedad que sería un inmueble por su destino bajo una ley estatal aplicable incluyendo pero no limitándose a lo siguiente: (haga una lista de todo el equipo, maquinaria, facilidades de almacenaje accesionadas a bienes inmuebles, particularmente sistemas de recogedores de cosechas, tanques de volumen, etc.). -----

[] **INTANGIBLES** - todos los intangibles generales y futuros, incluyendo pero no limitándose a listas de clientes, libros, registros, incluyendo sin limitación, todos los expedientes de correspondencia y crédito, cintas, tarjetas, tirada en computadora, programas de computadora, y otros papeles y documentos que estén en posesión o control de **LA DEUDORA** o de cualquier negociado de servicio de computadora, derechos en franquicias y contratos de venta, patentes, derechos de autor, derechos de marca, emblemas, nombres de marca, diseños de etiquetas, planes, planes detallados en cianotipia, patrones, secretos de marca, licencias, plantillas, troquelos, moldes y fórmulas. ------------------------------------------------------------

[] **OTRA COLATERAL** - específicamente (incluya todos los vehículos de motor, residenciales móviles, pagarés, acciones, certificados de depósitos, etc.). ----------------------------

[] Todas las ganancias y productos de la **COLATERAL** anterior, incluyendo lo que resulte del seguro. --------------------------------------------------------------------------

[] Toda la propiedad del tipo designado de aquí en adelante como **COLATERAL** propiedad actual o adquirida de aquí en adelante incluyendo pero no limitándose a todos los reemplazos, sustituciones, adiciones y accesorios a esto. --------------------------------------

[] Todos los certificados de participación de acciones y créditos de remanentes asignados, incluyendo derechos a esto, ahora o más adelante, emitidos por **EL ACREEDOR GARANTIZADO**. ---------------------------------------------------------------------------

4

-----Las cosechas y/o accesorios descritos anteriormente están o habrán de estar localizados en la finca ocupada o propiedad de **LA DEUDORA** en: (describa distancia y nombre o número de la carretera, intersección o pueblo más cercano, y número de cuerdas. Opcional -si es conocido, libro de escrituras y referencia de página en donde aparece una descripción legal de los bienes raíces deberá mencionarse.). -------------------------------------------------------------------

## IV. GARANTIAS, CONVENIOS Y ASEVERACIONES

-----PRIMERO: Por medio de esto **LA DEUDORA** asevera, garantiza y acuerda lo siguiente: -----------------------------------------------------------------------------

-----1. Las aseveraciones contenidas en la(s) solicitud(es) de préstamo(s) y/o financiamiento de **LA DEUDORA** son ciertas y correctas y que el producto del préstamo o préstamos asegurados por medio de este Acuerdo habrá de utilizarse exclusivamente para los propósitos que aparecen aseverados y expuestos en tal(es) solicitud(es) y en la eventualidad de que cualesquiera de la **COLATERAL** sea comprada con el producto de cualquier préstamo o adelanto asegurado en este Acuerdo, **LA DEUDORA**, conforme, autoriza a **EL ACREEDOR GARANTIZADO**, a opción suya, a pagar el precio de venta al vendedor de tal **COLATERAL**, y -----------------------

-----2. **LA DEUDORA** es dueña y/o tiene interés y/o derecho sobre la **COLATERAL** descrita aquí la cual manifiesta está libre y expedita de gravámenes e intereses y de garantías anteriores, EXCEPTO con relación a lo siguiente: (haga una lista de cualquier gravamen en contra de la **COLATERAL** descrita en el Artículo II anterior, inserte NINGUNO) (si aplica). -----------------

-----3. **LA DEUDORA** deberá de pagar, cuando estén vencidas y/o sea exigible su pago, todas las deudas aseguradas por medio de este acuerdo con sus respectivos intereses, conjuntamente con cualquier renta, impuestos, incautaciones, productos u otras reclamaciones que son o puedas convertirse en gravámenes respecto a dicha **COLATERAL**. ----------------------------------------

-----4. **LA DEUDORA** deberá cuidar y mantener la **COLATERAL** como lo haría un buen padre de familia y no podrá gravar, cancelar, remover, vender adicionalmente o de otra forma disponer de la misma sin el consentimiento escrito de **EL ACREEDOR GARANTIZADO** y al serle requerido, deberá de proveer **COLATERAL** adicional que sea aceptable a **EL ACREEDOR GARANTIZADO**. ---------------------------------------------------------

-----5. **LA DEUDORA** deberá asegurar la **COLATERAL** por tales cantidades y en tal forma, según sea requerido por **EL ACREEDOR GARANTIZADO**, y hará de pagar las primas conforme. -------------------------------------------------------------------------------

-----6. **LA DEUDORA** deberá realizar aquellos actos, obtener, formalizar y entregar aquellas

5

cosas, escrituras, seguros e instrumentos adicionales, según **EL ACREEDOR GARANTIZADO** le requiera de tiempo en tiempo para investir y asegurar a **EL ACREEDOR GARANTIZADO** de sus derechos bajo este Acuerdo y/o la **COLATERAL** ofrecida y los productos de ésta, incluyendo pero no limitando, a renuncias de arrendadores y acreedores hipotecarios. ------------------------------------------------------------------------------------------

-----7. **LA DEUDORA** deberá firmar ante notario la Declaración de Financiamiento correspondiente, y cualquier otro documento requerido por **EL ACREEDOR ASEGURADO** para perfeccionar el interés asegurado otorgando aquí o para efectuar los propósitos de este Acuerdo. -----------------------------------------------------------------------------------------

-----8. **LA DEUDORA** deberá someter y reportar, en forma satisfactoria para **EL ACREEDOR ASEGURADO**, la información que **EL ACREEDOR GARANTIZADO** pueda requerir con relación a la **COLATERAL**. La **COLATERAL**, al igual que los libros y registros de **LA DEUDORA**, habrán de guardarse en los predio de **LA DEUDORA** (si tal fuera el caso), **LA DEUDORA** habrá de notificar a **EL ACREEDOR GARANTIZADO** de forma oportuna acerca de cualquier cambio en la cotización de la **COLATERAL** y **LA DEUDORA** no habrá de remover la **COLATERAL** de dicha localización (excepto con relación a vehículos de motor y para inventario vendido en el curso ordinario de negocios), sin el consentimiento escrito de **EL ACREEDOR GARANTIZADO**. **LA DEUDORA** habrá de notificar a **EL ACREEDOR GARANTIZADO** inmediatamente, por escrito, acerca de cualquier adición, cambio o descontinuación de su lugar de negocios. ------------------------------------------------------

-----9. **LA DEUDORA** deberá, en todo momento durante las horas normales del negocio, darle a **EL ACREEDOR GARANTIZADO** o sus agentes, acceso completo y el derecho de auditar, chequear, inspeccionar y hacer sumarios y copias de los libros, registros, auditorías, correspondencia y todos los otros papeles de **LA DEUDORA** relacionados a la **COLATERAL**. **EL ACREEDOR GARANTIZADO** o sus agentes podrán entrar en los predios de **LA DEUDORA** a cualquier hora razonable durante horas laborables y de tiempo en tiempo con el propósito de inspeccionar la **COLATERAL** y cualesquiera registros relacionados a esta. ---------

-----10.**LA DEUDORA** deberá, a solicitud de **EL ACREEDOR GARANTIZADO**, y sin notificación a **LA DEUDORA**, **EL ACREEDOR GARANTIZADO** mismo, podrá a nombre de **EL ACREEDOR GARANTIZADO** o de **LA DEUDORA**, en cualquier momento (sin importar si **LA DEUDORA** se encuentra o no en incumplimiento por la presente), notificar a deudores de cuentas, y de contratos y otros obligados en el gravamen mobiliario y el interés

asegurado ("security interest") de **EL ACREEDOR GARANTIZADO**, ordenar, implementar y administrar los pagos a ser pagados a **EL ACREEDOR GARANTIZADO**; **EL ACREEDOR GARANTIZADO** podrá exigir, demandar para cobrar o recibir cualquier dinero o propiedad pagadera o por cobrar en cualesquiera cuentas, derechos de contrato e intangibles generales, transar, liberar, comprometer, ajustar, demandar con relación a, ejecutar, llevar a cabo o de otra manera hacer cumplir, valer o ejecutar cualquier cuenta, derecho de contrato o derechos intangibles generales según determine **EL ACREEDOR GARANTIZADO** (sin importar si **LA DEUDORA** está o no en incumplimiento por la presente), y para los propósitos de poner en práctica los derechos de **EL ACREEDOR GARANTIZADO** según este documento de Acuerdo de Garantía, **EL ACREEDOR GARANTIZADO** podrá recibir cualquier correspondencia abierta dirigida a **LA DEUDORA** y retener y endosar pagarés, cheques, letras de cambio, giros, documentos de título u otras formas de pago a nombre de y a favor de **LA DEUDORA**. ----------

-----11. **LA DEUDORA** deberá notificar a **EL ACREEDOR GARANTIZADO** inmediatamente acerca de cualquier evento que cause una pérdida material o merma en el valor de la **COLATERAL** y la cantidad de tal pérdida o depreciación. -------------------------------------------

-----12. Al serle solicitado por **EL ACREEDOR GARANTIZADO**, **LA DEUDORA** deberá suplirle a **EL ACREEDOR GARANTIZADO** anualmente, por cada persona u otra entidad obligada al repago de la deuda asegurada por medio de este Acuerdo, dentro de noventa (90) días luego del final del año fiscal del obligado que se esté reportando, una hoja del balance adeudado a la fecha del tal año fiscal, y un estado de ganancias y pérdidas para ese año que esté terminando, en cada caso, y en forma y substancia aceptable para **EL ACREEDOR GARANTIZADO** y certificada como cierta y correcta que no deberá contener aseveraciones falsas u omisiones materiales. Si la cantidad principal de la deuda asegurada por este Acuerdo es un exceso de **$100,000.00**, tal información financiera deberá de ser provista sin necesidad de solicitud por parte de **EL ACREEDOR GARANTIZADO**. Si tal información financiera no se somete según se ha dicho y tal omisión continua durante treinta (30) días luego de notificación escrita a **LA DEUDORA** con relación a tal omisión, tal omisión habrá de constituir un caso de incumplimiento bajo este Acuerdo. ------------------------------------------------------------------------

-----13. **LA DEUDORA** se obliga, cuando así se lo requiera a **EL ACREEDOR GARANTIZADO**, por sí, podrá entregar a **LA DEUDORA** de las cuentas gravadas, copia de este Contrato, o notificación del mismo, requiriéndole que todo pago, abono o dinero remitido por concepto de las cuentas gravadas, deberán ser remitidos directamente a **EL ACREEDOR**

7

**GARANTIZADO** a la siguiente dirección: --------------------------------------------------

BANCO POPULAR DE PUERTO RICO
Y/O SR. JOFFRE GOMEZ MUÑOZ
APARTADO 1720
MAYAGUEZ PR 00681

-----14.**LA DEUDORA** mantendrá, renovará y conservará en vigencia todos los derechos, poderes, licencias, privilegios y franquicias que en la actualidad posea. ----------------------------

-----15.Se conviene expresamente que **EL ACREEDOR GARANTIZADO** podrá cargar o debitar, a cualquier cuenta de depósito que **LA DEUDORA** tuviera con **EL ACREEDOR GARANTIZADO**, aquella cantidad que fuera necesaria para satisfacer los intereses devengados, plazos de principal o notas vencidas de los préstamos concedidos bajo este Contrato, o cualquier otra deuda, que no fueran pagados al Banco dentro del término de diez (10) días de la fecha en que los mismo sean pagaderos y exigibles. ------------------------------------------------

-----16.Como condición previa a cualquier desembolso bajo el presente Contrato, **LA DEUDORA** someterá al Banco un Estado Financiero cubriendo el último año fiscal de **LA DEUDORA**. ------------------------------------------------------------

-----17.**LA DEUDORA** pagará puntualmente el principal y los intereses devengados de acuerdo con los términos pactados. ------------------------------------------------

-----18.**LA DEUDORA** pagará oportunamente todas las contribuciones, patentes, arbitrios y derramas que el Gobierno de Puerto Rico le imponga sobre sus propiedades e ingresos, disponiéndose, que **LA DEUDORA** podrá cuestionar la validez de cualquier contribución, arbitrio o derrama o su cuantía, pudiendo litigar de buena fe su responsabilidad, siempre que establezca las correspondientes y adecuadas reservas. ------------------------------------------------

### V. CASOS DE INCUMPLIMIENTO

-----Al ocurrir cualesquiera de los eventos descritos de aquí en adelante, **LA DEUDORA** estará en incumplimiento: ------------------------------------------------

-----1. Cualquier falta de **LA DEUDORA** en observar o ejecutar alguna condición, acuerdo o compromiso bajo este Acuerdo de Garantía, o cualquier violación por parte de **LA DEUDORA** de cualquier garantía, representación y/o aseveración en este Acuerdo de Garantía, o ------------

-----2. Si **LA DEUDORA** comete una violación o incumplimiento bajo cualquier pagaré, acuerdo, cesión, acuerdo de garantía, hipoteca, escritura de fideicomiso o acuerdo relacionado o documento entre las partes a estos fines, haya sido previamente otorgado en el futuro, o ----------

-----3. Si hay alguna pérdida material, deterioro o reducción en el valor de la **COLATERAL** que no esté cubierto por el seguro, o ----------------------------------------------

8

-----4. Si **LA DEUDORA** incumple un acuerdo o compromiso con algún acreedor de **LA DEUDORA**, si el efecto de tal incumplimiento es permitirle al tenedor de tal obligación o a cualquier representante del tenedor, que la o cualquier obligación sea declarada vencida antes de su fecha de vencimiento o antes de sus fechas regularmente programadas para pago o el permitirle a un síndico o tenedor de cualquier deuda elegir una mayoría en la Junta de Directores de **LA DEUDORA** (si este fuera el caso), o ------------------------------------------------------------

-----5. Si **LA DEUDORA** falla en hacer cualquier pago de principal o interés a **EL ACREEDOR GARANTIZADO** con relación a cualquier pagaré o bajo cualquier acuerdo en o antes de la fecha en que tal pago venza; o si el pagaré es un instrumento a la demanda, no haga el pago en su totalidad cuando se haga el requerimiento, o ---------------------------------------------

-----6. Si **LA DEUDORA** falla en pagar cualesquiera otros pagos de **EL ACREEDOR GARANTIZADO** dentro de cinco (5) días luego de haber sido facturado o requerido por **EL ACREEDOR GARANTIZADO**, o -----------------------------------------------------------------

-----7. Al solicitar el nombramiento de un síndico provisional, liquidador, custodio, síndico u oficial similar o fiduciario similar para **LA DEUDORA**, entonces el incumplimiento bajo esta cláusula no habrá de ocurrir si dicha solicitud es desestimada dentro de los treinta (30) días de haber sido emitida, o -----------------------------------------------------------------

-----8. Al emitirse cualquier proceso de liquidación, embargo o trabar ejecución en contra de **LA DEUDORA** o su propiedad, que no sea removido, desestimado o satisfecho en o antes de los treinta (30) días de haberse promovido, o ----------------------------------------------------------

-----9. Si cualquier sentencia final para el pago de dinero es emitida por una corte de record contra **LA DEUDORA** y **LA DEUDORA** no paga la misma dentro de los treinta (30) días desde la fecha de su notificación, o -----------------------------------------------------------------

-----10. Si **LA DEUDORA** se torna insolvente, hace una cesión para el beneficio de los acreedores u ofrece un ajuste o extensión a los acreedores, o ----------------------------------------

-----11. Al comenzar los procedimientos de quiebra o procedimientos para disolución, liquidación o un arreglo, reorganización o reajuste de cualquier de las deudas de **LA DEUDORA**, ya sea instituido por o en contra de **LA DEUDORA**, pero si tales procedimientos son instituidos en contra de **LA DEUDORA** entonces el incumplimiento no habrá de ocurrir si dichos procedimientos son revocados o desestimados dentro de los treinta (30) días luego de tal comienzo. ------------------------------------------------------------------

## VI. DERECHOS Y REMEDIOS PARA INCUMPLIMIENTO

-----Al ocurrir cualesquier de los anteriores Eventos de Incumplimiento, **EL ACREEDOR GARANTIZADO** habrá de tener la opción de declarar todas las deudas u obligaciones de **LA DEUDORA** bajo este Acuerdo de Garantía y cualquier otro acuerdo, pagaré o compromiso de parte de **LA DEUDORA**, incluyendo, sin limitación alguna, toda la responsabilidades bajo cualesquiera acuerdos asignados o cedidos a **EL ACREEDOR GARANTIZADO**, con recurso, junto con el interés sobre éstos, a que advengan inmediatamente vencidos y pagaderos sin notificación adicional o requerimiento por parte de **EL ACREEDOR GARANTIZADO**. No obstante cualquier disposición contraria contenida en este acuerdo, **EL ACREEDOR GARANTIZADO** se reserva el derecho de requerir el pago en su totalidad con relación a cualquier obligación de **LA DEUDORA** pagadera a la demanda si la ocurrencia de cualesquiera de los anteriores Eventos de incumplimiento. Con lo cual, en adición a todos los derechos que **EL ACREEDOR GARANTIZADO** pueda tener bajo la Ley número 241 del 19 de septiembre de 1996, según enmendada en su Capítulo 9 sobre "Transacciones Garantizadas", o cualquier otra ley, **EL ACREEDOR GARANTIZADO** también tendrá los siguientes derechos y remedios: -----------------------------------------------------------------------------------

-----1. Hasta el punto que la ley lo permita, el derecho de tomar posesión de la **COLATERAL** con o sin procedimiento judicial, ----------------------------------------------------------

-----2. **EL ACREEDOR GARANTIZADO** puede pacíficamente por sus propios medios o con asistencia judicial entrar en los predios de **LA DEUDORA** y tomar posesión de la **COLATERAL**, o dar cuenta de no ser susceptible de ser utilizada, o disponer de la **COLATERAL** en los predios de **EL DEUDORA** si obligación o responsabilidad alguna por alquiler, almacenaje, utilidades u otras sumas, y **LA DEUDORA** no habrá de resistir o interferir con tal acción. ----------------------------------------------------------------------------

-----3. **EL ACREEDOR GARANTIZADO** puede requerirle a **LA DEUDORA** que reuna todo o parte de la **COLATERAL** y ponerla a la disposición de **EL ACREEDOR GARANTIZADO** en cualquier lugar a ser designado por **EL ACREEDOR GARANTIZADO** que sea razonablemente conveniente para **LA DEUDORA** y para **EL ACREEDOR GARANTIZADO**.

-----4. Conforme este Acuerdo, **LA DEUDORA** acuerda que una notificación enviada a este por lo menos cinco (5) días antes de la fecha de cualquier venta pública, o del tiempo, después del cual cualquier venta privada u otra disposición de la **COLATERAL** ha de ser realizada, habrá de considerarse notificación razonable de tales ventas u otra disposición; disponiéndose, sin

embargo, que si el inventario o bienes se considerase perecedero, **LA DEUDORA** acuerda que veinticuatro (24) horas de notificación previa por escrito (incluyendo correo o comunicación similar) habrá de considerarse como notificación razonable de venta o disposición de tal inventario perecedero, y --------------------------------------------------------------------------------

-----5. Si la ley lo permite, **EL ACREEDOR GARANTIZADO**, también habrá de tener el derecho de solicitar y tener un síndico provisional, custodio, o fiduciario similar nombrado por la corte de jurisdicción competente para poder administrar, proteger y mantener la **COLATERAL** y continuar la operación del negocio de **LA DEUDORA** y para cobrar todos los ingresos y las ganancias de estos y aplicar los mismos al pago de todos los gastos y otros cargos del tal sindicatura, incluyendo la compensación del síndico provisional, y al pago de las responsabilidades de **LA DEUDORA** y las deudas aseguradas por este Acuerdo. ------------------

-----6. Si **LA DEUDORA** incumple o deja de llevar a cabo cualquier acuerdo, garantía o compromiso dentro de este Acuerdo de Garantía, **EL ACREEDOR GARANTIZADO** puede, u opción suya, hacer pagos o incurrir en gastos para aliviar el efecto del incumplimiento o restaurar el cumplimiento, disponiéndose, sin embargo, que **EL ACREEDOR GARANTIZADO** no habrá de estar bajo obligación alguna de hacer tal cosa, y en adición, disponiéndose, que cualquier acción tal por parte de **EL ACREEDOR GARANTIZADO** no habrá de constituir un relevo al incumplimiento de **LA DEUDORA**. Cualquier pago hecho o gasto incurrido por **EL ACREEDOR GARANTIZADO** en aliviar el efecto de cualquier incumplimiento o restaurar el cumplimiento habrá de ser obligación asegurada por la **COLATERAL** y habrá de constituir parte de las obligaciones y responsabilidades de **LA DEUDORA** a **EL ACREEDOR GARANTIZADO** conjuntamente con sus intereses a la tasa más alta establecida en cualquier acuerdo o los pagarés de **LA DEUDORA** a **EL ACREEDOR GARANTIZADO**.----------------

-----7. **LA DEUDORA** deberá si no fuese prohibido por la ley aplicable, reembolsar a **EL ACREEDOR GARANTIZADO** por todas las costas, gastos, cargos y honorarios de abogado en los que incurra **EL ACREEDOR GARANTIZADO** para poner en efecto las disposiciones de este Acuerdo de Garantía o cobrar cualquier responsabilidad presente o futura adeudada por **LA DEUDORA** a **EL ACREEDOR GARANTIZADO** conjuntamente con los intereses a la tasa de interés más alta establecida en cualquier acuerdo o pagaré de **LA DEUDORA** a **EL ACREEDOR GARANTIZADO**. ----------------------------------------------

**VII. DISPOSICIONES MISCELANEAS**

-----1. La renuncia de **EL ACREEDOR GARANTIZADO** de cualquier garantía y/o compromisos contenidos aquí, o de cualquier violación a éstos, o la omisión de **EL ACREEDOR GARANTIZADO** en cualquier momento en particular de ejercer un derecho, remedio, privilegio, u opción aquí contenida no habrá de interpretarse como o constituir una renuncia de tal, o cualquier garantía, gravamen mobiliario, compromiso, derecho, privilegio, remedio, u opción en el futuro, o de cualquier violación subsiguiente, y no habrá de ninguna manera afectar o perjudiciar en forma alguna los derechos de **EL ACREEDOR GARANTIZADO** o sus intereses o gravámenes según se dispone aquí, o la responsabilidad y obligaciones garantizadas de **LA DEUDORA** bajo este Acuerdo de Garantía. Ningún atraso u omisión de **EL ACREEDOR GARANTIZADO** en ejercitar cualquier derecho habrá de operar como una renuncia de tal derecho o de algún otro derecho. Todos los derechos y remedios de **EL ACREEDOR GARANTIZADO**, ya sean evidenciados por medio de este Acuerdo de Garantía o por cualquier otro acuerdo o contrato, instrumento o instrumento de crédito, habrán de ser acumulativos y podrán ser ejercidos sencillamente o concurrentemente. **EL ACREEDOR GARANTIZADO** puede proceder en contra de toda o cualquier parte de la **COLATERAL**, o cualquiera otra **COLATERAL**, en cualquier orden. -------------------------------------------------

-----2. **EL ACREEDOR GARANTIZADO** no se le habrá de requerir que supla alguna fianza o provea alguna caución o garantía antes de hacer valer cualquier derecho, reclamación, posesión, dominio o control sobre, en o a la **COLATERAL**. ----------------------------------------------------

-----3. Todos los convenios, acuerdos, representaciones y garantías hechas aquí habrán de considerarse como materiales y de confiabilidad para **EL ACREEDOR GARANTIZADO**, y habrán de subsistir en el cumplimiento y entrega de este Acuerdo de Garantía. ----------------------

-----4. **EL ACREEDOR GARANTIZADO** tendrá la facultad de ceder el presente Acuerdo de Gravamen Mobiliario, según lo estime conveniente. Conforme a lo antes expuesto, todos los derechos de **EL ACREEDOR GARANTIZADO** bajo este Acuerdo de Garantía habrán de tener efecto para el beneficio de sus sucesores y cesionarios, y todas las obligaciones de el (los) **DEUDOR (es)** habrá(n) de comprometer a los sucesores de **LA DEUDORA** y sus cesionarios. -

-----5. Es la intención de las partes que este Acuerdo de Garantía asegure deudas existentes y futuras y no obstante la (las) cantidad(es) asegurada(s) y/o garantizada(s) en cualquier momento sean reducidas a cero, este acuerdo habrá de permanecer en toda su fuerza y vigor hasta que una Declaración de Terminación debidamente cumplimentada sea radicada terminando así o gravamen mobiliario y el interés asegurado (security interest) de **EL ACREEDOR**

**GARANTIZADO** en la **COLATERAL** descrita en este Acuerdo. ----------------------------------

-----6. Si más de un **DEUDOR** firma este Acuerdo, o si un subsidiario o garantizador solidario de **LA DEUDORA** se une a este Acuerdo y se convierte en **DEUDOR** bajo este Acuerdo, la responsabilidad de todos los deudores habrá de ser mancomunada y solidaria, y el término **DEUDOR** según es usado aquí habrá de significar todos los **DEUDORES**, colectivamente y solidariamente, y está expresamente extendido y acordado que **EL ACREEDOR GARANTIZADO** ante un incumplimiento bajo este Acuerdo, podrá, a opción suya, proceder en contra de cualquier **DEUDOR** o cualesquiera de los **DEUDORES** mencionados aquí sin afectar y menoscabar el derecho de **EL ACREEDOR GARANTIZADO** de proceder en contra de todos los **DEUDORES**, mencionados aquí, colectivamente. El derecho de **EL ACREEDOR GARANTIZADO** en contra de uno o más **DEUDORES** no habrá, en forma alguna, de operar para liberar o afectar las responsabilidades, los convenios, las garantías, representaciones y compromisos de cualquier otro **DEUDOR** mencionado en este Acuerdo. --------------------------

-----7. Todas las partes en este Acuerdo de Garantía, incluyendo garantizadores, fiadores garantizados, endosantes, co-deudores, consienten y acuerdan sin notificación adicional a ninguno de ellos, y sin afectar la responsabilidad y obligaciones de cualquiera de ellos, que: ------

-----(a) El incumplimiento de cualquier obligación de cualquier parte puede ser renunciada, extendida, o acelerada por **EL ACREEDOR GARANTIZADO**; ----------------------------------

-----(b) Cualquier acuerdo de crédito puede ser renovado, extendido o reamortizado total o parcialmente; --------------------------------------------------------------------

-----(c) Cualquier **COLATERAL** puede ser sustituida, entregada, liberada o manejada de la manera que determine a su criterio **EL ACREEDOR GARANTIZADO**; ------------------------

-----(d) Cualquier parte puede ser liberada totalmente o parcialmente de su obligación y/o responsabilidad, y --------------------------------------------------------------------

-----(e) Cualquier defensa que pueda estar disponible si **EL ACREEDOR GARANTIZADO** omite perfeccionar un interés de garantía en una propiedad o bien mobiliario de conformidad con las leyes aplicables, son renunciadas. Todas las partes renuncian solidariamente al aviso, presentación, protesta y notificación de protesta y renuncian al beneficio de todas las leyes de exención existentes actualmente o legisladas posteriormente en cuanto a cualquier pagaré, inversiones, cesiones u otro instrumentos asegurado por medio de este Acuerdo y en cualquier evento sobre la propiedad descrita aquí, y en adición renuncian a cualesquiera y toda defensa, derecho de compensación, reclamación o derecho de subrogación que ellos o cualquiera de ellos

13

pueda o pudieran tener en contra de **EL ACREEDOR GARANTIZADO**, sus sucesores o cesionarios y por medio de este Acuerdo de Garantía renuncian a cualquier defensa que ellos o cualesquiera de ellos pueda o pudieran tener con relación al intercambio, venta, entrega u otro manejo o disposición de cualquier **COLATERAL**. --------------------------------------------------

-----EN TESTIMONIO DE LO CUAL, este Acuerdo de Garantía es otorgado en Sabana Grande, Puerto Rico, hoy día treinta y uno (31) de marzo de dos mil cinco (2005).--------------------------

**VINAVIC RESTAURANT INC.**
representado por **VICTOR MANFREDO CARDONA CARDONA**

**BANCO POPULAR DE PUERTO RICO**
representado por **DON JOFFRE GOMEZ MUÑOZ**

**AFIDAVIT NUMERO:** 12,089

-----Reconocido y suscrito ante mí por **BANCO POPULAR DE PUERTO RICO** representado por **JOFFRE GOMEZ MUÑOZ** y **VINAVIC RESTAURANT INC.**, representado por **VICTOR MANFREDO CARDONA CARDONA** de las circunstancias personales antes expresadas, a quienes doy fe de conocer personalmente. --------------------------

-----En Sabana Grande, Puerto Rico, hoy día treinta y uno (31) de marzo de dos mil cinco (2005).-----------------------------------------------------------------------------------
(2005).-------------------------------------------------------------------------------------------------

**NOTARIO PÚBLICO**



14

## SUMMARY OF SALIENT FACTS AND CONCLUSIONS

**Subject Property**

The appraised property consist of several equipment related to the elaboration of Mexican food "Taco Maker" Restaurant. Subject pieces of equipment are located within the municipality, Aguada, Puerto Rico.

| | | |
|---|---|---|
| _Method of Valuation_ | : | Cost Approach for Machinery and Equipment. |
| _Owner Of Records_ | : | Mr. Ramón Delestre |
| _Property Rights Appraised_ | : | Fee Simple |
| _Purpose of the Appraisal_ | : | To estimate the market value of the fee simple interest as of the effective date of this appraisal. |
| _Intended Use of the Appraisal_ | : | The intended use of this appraisal is to serve as the basis for a loan collateral. |
| _Final Estimate of Value_ | : | $118,000.00 |
| _Effective Date of Appraisal_ | : | December 27, 2004 |
| _Date of the Report_ | : | January 11, 2005 |
| _Exposure Time_ | : | Three (3) to six (6) months |

# PROPERTY IDENTIFICATION AND ASSESSMENT

## Machinery and Equipment

1.  **One (1) Stainless Steel Rail**
    Serial Number
    Working Conditions
    Appearance
    Estimated Market Value

    None
    Good
    Good
    $9,000.00

2.  **One (1) Staging Cabinet**
    Serial Number
    Working Conditions
    Appearance
    Estimated Market Value

    8783709902
    Good
    Good
    $2,500

3.  **One (1) Bean Mixer**
    Serial Number
    Working Conditions
    Appearance
    Estimated Market Value

    1670211603
    Good
    Good
    $400.00

4.  **One Stove**
    Serial Number
    Working Conditions
    Appearance
    Estimated Market Value

    None
    Good
    Good
    $700.00

5.  **One (1) Fryer**
    Serial Number
    Working Conditions
    Appearance
    Estimated Market Value

    481243422
    Good
    Good
    $1,500.00

6.  **Two (2) Prep Table**
    Serial Number
    Working Conditions
    Appearance
    Estimated Market Value $400.00 x 2

    None
    Good
    Good
    $800.00

7.   **Two (2) Freezer**
     Serial Number                                                     S6689196C
                                                                       WB31837570

     Working Conditions                                                Good
     Appearance                                                        Good
     Estimated Market Value $6,000/$1000                               $7,000.00

8.   **One (1) Cooler**
     Serial Number                                                     None
     Working Conditions                                                Good
     Appearance                                                        Good
     Estimated Market Value                                            $5,000.00

9.   **One (1) Ice Machine**
     Serial Number                                                     None
     Working Conditions                                                Good
     Appearance                                                        Good
     Estimated Market Value                                            $6,500.00

10.  **One (1) Sink**
     Serial Number                                                     None
     Working Conditions                                                Good
     Appearance                                                        Good
     Estimated Market Value                                            $1,000.00

11.  **Three (3) Microwaves**
     Serial Number                                                     9905212816
                                                                       9702194500
                                                                       9512135694
                                                                       8806019621
     Working Conditions                                                Good
     Appearance                                                        Good
     Estimated Market Value $1,500 x 4                                 $6,000.00

12.  **Cash Register System**
     Serial Number                                                     None
     Working Conditions                                                Good
     Appearance                                                        Good
     Estimated Market Value                                            $8,000.00

13. **One (1) Exhaust Hood**
    Serial Number                        None
    Working Conditions                   Good
    Appearance                           Good
    Estimated Market Value               $1,800.00

14. **One (1) Menu Board**
    Serial Number                        None
    Working Conditions                   Good
    Appearance                           Good
    Estimated Market Value               $2,000.00

15. **Drive Thru Speaker System**
    Serial Number                        None
    Working Conditions                   Good
    Appearance                           Good
    Estimated Market Value               $6,000.00

16. **One (1) Hand Sink**
    Serial Number                        None
    Working Conditions                   Good
    Appearance                           Good
    Estimated Market Value               $75.00

17. **Three (2) Fire Extinguisher**
    Serial Number                        None
    Working Conditions                   Good
    Appearance                           Good
    Estimated Market Value $150.00 x 2   $300.00

18. **One (1) Fryer Timer**
    Serial Number                        None
    Working Conditions                   Good
    Appearance                           Good
    Estimated Market Value               $200.00

19. **One (1) Customer Suggestion Box**
    Serial Number                        None
    Working Conditions                   Good
    Appearance                           Good
    Estimated Market Value               $15.00

20. **Two (2) Scales**
    Serial Number | None
    Working Conditions | Good
    Appearance | Good
    Estimated Market Value $300.00 x 2 | $600.00

21. **Music System**
    Serial Number | None
    Working Conditions | Good
    Appearance | Good
    Estimated Market Value $300.00 x 2 | $300.00

22. **One (1) Grease Trap**
    Serial Number | None
    Working Conditions | Good
    Appearance | Good
    Estimated Market Value | $300.00

22. **Furniture (Lump Sum)**
    Serial Number | None
    Working Conditions | Good
    Appearance | Good
    Estimated Market Value | $12,000.00

23. **Air Conditioning**
    Serial Number | None
    Working Conditions | Good
    Appearance | Good
    Estimated Market Value | $18,000.00

24. **Signs**
    Serial Number | None
    Working Conditions | Good
    Appearance | Good
    Estimated Market Value | $9,000.00

25. **Awnings**
    Serial Number | None
    Working Conditions | Good
    Appearance | Good
    Estimated Market Value | $8,000.00

26.  **Kitchen Supplies**
     Serial Number                                None
     Working Conditions                           Good
     Appearance                                   Good
     Estimated Market Value                       $2,000.00

27.  **One (1) Frying Station**
     Serial Number                                None
     Working Conditions                           Good
     Appearance                                   Good
     Estimated Market Value                       $750.00

28.  **Racks System**
     Serial Number                                None
     Working Conditions                           Good
     Appearance                                   Good
     Estimated Market Value                       $150.00

29.  **Emergency Lights**
     Serial Number                                None
     Working Conditions                           Good
     Appearance                                   Good
     Estimated Market Value                       $500.00

30.  **One (1) Drive Thru Menu Board**
     Serial Number                                None
     Working Conditions                           Good
     Appearance                                   Good
     Estimated Market Value                       $4,000.00

31.  **Light Boxes**
     Serial Number                                None
     Working Conditions                           Good
     Appearance                                   Good
     Estimated Market Value                       $2,000.00

32.  **Two (2) Toasters**
     Serial Number                                None
     Working Conditions                           Good
     Appearance                                   Good
     Estimated Market Value $400.00 x 2           $800.00

33.  **Lighting**
     Serial Number                          None
     Working Conditions                     Good
     Appearance                             Good
     Estimated Market Value                 $1,200.00

34.  **One (1) Soup Kettle**
     Serial Number                          None
     Working Conditions                     Good
     Appearance                             Good
     Estimated Market Value                 $210.00

**Depreciated Value of Equipment**                        $118,600.00

**Rounded to**

                        **$118,600.00**
          **(ONE HUNDRED EIGHTEEN THOUSAND DOLLARS)**

## SUMMARY OF SALIENT FACTS AND CONCLUSIONS

### Subject Property

The appraised property consist of several equipment related to the elaboration of Mexican food "Taco Maker" Restaurant . Subject pieces of equipment are located within the municipality, Aguada, Puerto Rico.

| | | |
|---|---|---|
| *Method of Valuation* | : | Cost Approach for Machinery and Equipment. |
| *Owner Of Records* | : | Mr. Ramón Delestre |
| *Property Rights Appraised* | : | Fee Simple |
| *Purpose of the Appraisal* | : | To estimate the market value of the fee simple interest as of the effective date of this appraisal. |
| *Intended Use of the Appraisal* | : | The intended use of this appraisal is to serve as the basis for a loan collateral. |
| *Final Estimate of Value* | : | $147,000.00 |
| *Effective Date of Appraisal* | : | December 27, 2004 |
| *Date of the Report* | : | January 11, 2005 |
| *Exposure Time* | : | Three (3) to six (6) months |

## PROPERTY IDENTIFICATION AND ASSESSMENT

### Machinery and Equipment

1. **One (1) Stainless Steel Rail**
   Serial Number                              None
   Working Conditions           Good
   Appearance                        Good
   Estimated Market Value    $8,000.00

2. **One (1)  Staging Cabinet**
   Serial Number                     8783709902
   Working Conditions           Good
   Appearance                      Good
   Estimated Market Value    $2,500

3. **One (1) Bean Mixer**
   Serial Number                     988946
   Working Conditions           Good
   Appearance                      Good
   Estimated Market Value    $400.00

4. **One Stove**
   Serial Number                     None
   Working Conditions           Good
   Appearance                      Good
   Estimated Market Value    $700.00

5. **One (1) Fryer**
   Serial Number                     None
   Working Conditions           Good
   Appearance                      Good
   Estimated Market Value    $1,500.00

6. **Two (2) Prep Table**
   Serial Number                     None
   Working Conditions           Good
   Appearance                      Good
   Estimated Market Value    $400.00

7. **One (1) Freezer**
   Serial Number          None
   Working Conditions      Good
   Appearance           Good
   Estimated Market Value  $4,800.00

8. **One (1) Cooler**
   Serial Number          None
   Working Conditions      Good
   Appearance           Good
   Estimated Market Value  $6,500.00

9. **One (1) Ice Machine**
   Serial Number          None
   Working Conditions      Good
   Appearance           Good
   Estimated Market Value  $6,000.00

10. **One (1) Sink**
    Serial Number          None
    Working Conditions      Good
    Appearance           Good
    Estimated Market Value  $600.00

11. **Three (3) Microwaves**
    Serial Number          8802014806
                              9512735608
    Working Conditions      Good
    Appearance           Good
    Estimated Market Value  $3,600.00

12. **Cash Register System**
    Serial Number          None
    Working Conditions      Good
    Appearance           Good
    Estimated Market Value  $3,000.00

13. **One (1) Exhaust Hood**
    Serial Number          None
    Working Conditions      Good
    Appearance           Good
    Estimated Market Value  $1,800.00

14. **One (1) Menu Board**
    Serial Number .............................. None
    Working Conditions ........................ Good
    Appearance ................................ Good
    Estimated Market Value .................... $2,000.00

15. **Drive Thru Speaker System**
    Serial Number .............................. None
    Working Conditions ........................ Good
    Appearance ................................ Good
    Estimated Market Value .................... $6,000.00

16. **One (1) Hand Sink**
    Serial Number .............................. None
    Working Conditions ........................ Good
    Appearance ................................ Good
    Estimated Market Value .................... $75.00

17. **Three (3) Fire Extinguisher**
    Serial Number .............................. None
    Working Conditions ........................ Good
    Appearance ................................ Good
    Estimated Market Value $150.00 x 3 ........ $450.00

18. **One (1) Fryer Timer**
    Serial Number .............................. None
    Working Conditions ........................ Good
    Appearance ................................ Good
    Estimated Market Value .................... $200.00

19. **One (1) Customer Suggestion Box**
    Serial Number .............................. None
    Working Conditions ........................ Good
    Appearance ................................ Good
    Estimated Market Value .................... $20.00

20. Two (2) Scales
    Serial Number .............................. None
    Working Conditions ........................ Good
    Appearance ................................ Good
    Estimated Market Value $300.00 x 2 ........ $600.00

21.  **One (1) Grease Trap**
     Serial Number                          None
     Working Conditions                     Good
     Appearance                             Good
     Estimated Market Value                 $250.00

22.  **Furniture (Lump Sum)**
     Serial Number                          None
     Working Conditions                     Good
     Appearance                             Good
     Estimated Market Value                 $16,000.00

23.  **Air Conditioning**
     Serial Number                          None
     Working Conditions                     Good
     Appearance                             Good
     Estimated Market Value                 $15,000.00

24.  **Signs**
     Serial Number                          None
     Working Conditions                     Good
     Appearance                             Good
     Estimated Market Value                 $8,500.00

25.  **Awnings**
     Serial Number                          None
     Working Conditions                     Good
     Appearance                             Good
     Estimated Market Value                 $6,000.00

26.  **Kitchen Supplies**
     Serial Number                          None
     Working Conditions                     Good
     Appearance                             Good
     Estimated Market Value                 $2,000.00

27.  **One (1) Frying Station**
     Serial Number                          None
     Working Conditions                     Good
     Appearance                             Good
     Estimated Market Value                 $750.00

28. **Racks System**
    Serial Number
    Working Conditions
    Appearance
    Estimated Market Value

    None
    Good
    Good
    $2,500.00

29. **Five (5) Emergency Lights**
    Serial Number
    Working Conditions
    Appearance
    Estimated Market Value

    None
    Good
    Good
    $500.00

30. **One (1) Drive Thru Menu Board**
    Serial Number
    Working Conditions
    Appearance
    Estimated Market Value

    None
    Good
    Good
    $4,000.00

31. **Light Boxes**
    Serial Number
    Working Conditions
    Appearance
    Estimated Market Value

    None
    Good
    Good
    $2,000.00

32. **Two (2) Toasters**
    Serial Number
    Working Conditions
    Appearance
    Estimated Market Value $400.00 x 2

    None
    Good
    Good
    $800.00

33. **Lighting**
    Serial Number
    Working Conditions
    Appearance
    Estimated Market Value

    None
    Good
    Good
    $4,500.00

36. **One (1) Soup Kettle**
    Serial Number
    Working Conditions
    Appearance
    Estimated Market Value

    None
    Good
    Good
    $210.00

36. **Power Generator**
    Working Conditions
    Appearance
    Estimated Market Value

Good
Good
$35,000.00

**Depreciated Value of Equipment**

$147,155.00

**Rounded to**

$147,000.00
**(ONE HUNDRED FORTY SEVEN THOUSAND DOLLARS)**

Quotation # Q - 3964A
Date: 12/7/2004

**TO:**
- Sr. Victor Cardona
- PMB 235
- P.O. Box 5075
- San Germán, Puerto Rico 00683
- Attn.: Sr. Victor Cardona
- Tel. 787-892-6180   Fax 787-264-2415   Cel.

# We are pleased to offer this quotation as detailed below

| Amount | Description | Expanded |
|---|---|---|
| 1 Each | Model BCJD70S Power Systems Sound Attenuated Generator Set | $16,023.00 |

66 kW   82 kVA  Standby Power
60 Hz : 3 Phase :  0.8 PF

| | | |
|---|---|---|
| *Amp Load Capacity* : | 120 / 208 V  - | 229.00  Amps |
| *Amp Load Capacity* : | 120 / 240 V  - | 198.47  Amps |
| *Amp Load Capacity* : | 277 / 480 V  - | 99.23  Amps |

*Includes :*
*John Deere Diesel Engine*    Model 4039TF @ 1800 RPM
*Automatic Start Control*
Complete with 12 Volts Electric's, Radiator & Guard,
Muffler & Rain Cap, 900 CCA Battery & Battery Cables,
Duralite Air Cleaner and Mechanical Engine Governor.

*Stamford* Brushless Single Bearing Generator with
Adjustable Rheostat, +/- 1% Automatic Voltage Regulator and
Vibration Isolation Mounts.
Power Systems Deluxe Instrument / Control Panel with Safety
Shutdowns for Low Oil Pressure & High Water Temperature.
Complete with DC Voltmeter, Hourmeter, Oil Pressure &
Water Temperature Gauges, Frequency Meter, Ammeter,
Voltmeter, Panel Selector Switch and Key Starting Switch.
Maintenance and Service Manuals for Engine and Alternator.
33 Gal. Sub Base Fuel Tank with Mechanical Fuel Gauge.
*One Year Parts and Labor* Against Defects In Material And Workmanship in Engine.
*Price Includes Delivery Job Site & All Duties in Puerto Rico.*

**Additional Optional Equipment** (not included unless marked **included**):

| | | | |
|---|---|---|---|
| **included** | **Weather Inclemency Generator Enclosure** | | *included* |
| | - Rust Proof Enamel Paint : Vandal Proof | | |
| **included** | **Sound Proofing Enclosure** | 1" Foam, Mylar Reinforced | *included* |
| | -High Temperature, Oil & Fuel Proof | | |
| **included** | **Critical Silencer** | With Steel Flex Coupling | *included* |
| | -Nelson : Reduces 30 dB | | |
| **included** | **Auto Start Control** | With Safety Shutdown for | *included* |
| | -Overspeed, Overcrank, Low Oil Pressure and High Water Temp. | | |
| **included** | **Circuit Breaker** | Main Line Circuit Breaker | *included* |
| no | *Main Fuel Tank* | 300 Gals. Skid Mounted Round Tank with Fuel Gauge | $ 865.00 |
| no | *Main Fuel Tank with Dike* | 300 Gals. Round Tank with Fuel Gauge | $ 2,230.00 |
| no | *Main Fuel Tank* | 500 Gals. Skid Mounted Round Tank with Fuel Gauge | $ 1,425.00 |
| no | *Main Fuel Tank with Dike* | 500 Gals. Round Tank with Fuel Gauge | $ 2,925.00 |
| no | *Battery Trickle Charger* | StaticType : 12 VDC  2A | $ 233.00 |
| no | *Automatic Transfer Switch* | 225  Amps : 3Ø : NEMA 1 : 3 Poles | $ 3,268.00 |
| | Genswitch  :  Fully Automatic Logic Panel | | |
| no | *Automatic Transfer Switch* | 400  Amps : 3Ø : NEMA 1 : 3 Poles | $ 4,375.00 |
| | Genswitch  :  Fully Automatic Logic Panel | | |

**Delivery:** 1 - 2 weeks
**Terms:** 50% at Order; Balance COD
**Quotation Valid For 30 Days**
**Contact:** JEA

**100% Financing Available**

**T o t a l  F o r  T h i s  Q u o t a t i o n    $16,023.00**